Missouri Pacific Railroad Co. *v.* Warrick.

Opinion delivered June 2, 1924.

1. TRIAL—INSTRUCTION—GENERAL OBJECTION.—Where the court instructed the jury to find for the plaintiff if defendant's negligence "caused or contributed to cause" plaintiff's injuries, the words "contributed to cause" were surplusage, and could not be reached by a general objection.

2. TRIAL—INSTRUCTION—TIME FOR OBJECTION.—A specific objection to an instruction cannot be raised for the first time in a motion for new trial.

3. APPEAL AND ERROR—INSTRUCTION—HARMLESS ERROR.—Where assumed risk was not an issue, no prejudice could have resulted to appellant on account of instructions submitting that issue to the jury.

4. TRIAL—REPETITION OF INSTRUCTIONS.—It was not error to refuse requested instructions covered by instructions given by the court.

5. APPEAL AND ERROR—WAIVER OF OBJECTION.—In an action by a trainman for personal injuries received in a train collision, defendant filed a cross-complaint asking judgment against plaintiff for damages to its equipment caused by plaintiff's negligence; on the court's refusal to admit evidence of such damage, defendant took a voluntary nonsuit as to its cross-complaint. *Held* that defendant waived objection to exclusion of the evidence.

Appeal from Franklin Circuit Court, Charleston District; *James Cochran,* Judge; affirmed.

*Thos. B. Pryor* and *Vincent M. Miles,* for appellant.

1. The most grievous error on the part of the trial court was in the failure to properly submit the issue as to whether or not the negligence of the appellant in failing to give the appellee a caution card from Vian to Sallisaw was the proximate cause of the injury. It was of vital

importance that the court properly submit to the jury the issue as to which of the various things in evidence would constitute the proximate cause of the injury, hence, in giving instructions 4 and A-4, the court committed incurable and prejudicial error. For, while a case is conceivable where the words "cause, or contributed to cause" might be treated as one phrase, meaning "cause," where there is only one ground of negligence relied upon, yet that is not this case. On the contrary the whole gist of this controversy resolved itself around which one of several things was the proximate cause of the injury, and the main inquiry addressed to the jury demanded a finding by them as to what actually was the proximate cause. 84 Ark. 421; 87 Ark. 576; 86 Ark. 289; 91 Ark. 261; 97 Ark. 160.

2. Instruction No. 5 given by the court on the subject of assumed risk is directly contrary to the decisions of this court on that subject, in telling the jury that, under no circumstances, did the appellee assume the risk of any negligence of the appellant or of its officers, agents or servants. Moreover this suit was brought under the Federal Employers' Liability Act, and this court has recently held that a servant assumes the risk of negligence of his fellow-servant when he knew and appreciated the danger therefrom. 161 Ark. 122.

3. There was no competent evidence to prove that the train was backing that appellee's train ran into. The alleged statement of Tom Murray, the brakeman, made in Van Buren, after the accident occurred, was competent only to impeach his testimony, and was not competent to prove that the train was backing up. 52 Ark. 78; 57 Ark. 287; 58 Ark. 168; 67 Ark. 147; 78 Ark. 381; 97 Ark. 160; 105 Ark. 247; 137 Ark. 107; 143 Ark. 565.

*Chew & Ford,* for appellee.

1. The act of Congress under which this suit was brought, of April 22, 1908, U. S. Comp. Statutes, 1918, §§ 8657, 8659, gives the employee an absolute right of recovery for any injuries he may receive through the

negligence, *in whole or in part,* of the carrier, through its agents, officers and employees, although it may be shown by the proof that the employee was himself guilty of some act of negligence that, cooperating with the negligence of the carrier, brought about the injuries to the employee while he and the carrier were engaged in an act of interstate commerce. 233 U. S. 42; 229 U. S. 114; 127 Ark. 170. The only questions, therefore, presented for the jury to determine were: First, was appellant guilty of any acts of negligence, in whole or in part, that caused or brought about the injuries complained of? Second, was appellee guilty of any act of negligence cooperating with appellant's negligence that contributed to defeating his recovery, but for the purpose of enabling the jury to diminish the amount of his recovery? The verdict of the jury has determined both of these questions against the appellant.

2. A servant, as we understand the doctrine of assumed risk, on entering the employ of a master, assumes all of the risk that is ordinarily incident to the employment, but he does not assume any risk growing out of the negligence of the employer through the negligence of any of its agents or officers. 238 U. S. 507; 235 U. S. 375; 118 Ark. 49; 102 Ark. 562; 106 Ark. 25; 85 Ark. 503; 67 Ark. 209; 161 Ark. 122; 252 U. S. 18.

3. In passing upon the instructions, they will necessarily be read and construed as a whole, and, when that is done, it will be seen that there was no reversible or prejudicial error in any of them. Instruction 4 declares the law as defined by this court. 129 Ark. 530; 124 Ark. 118.

HUMPHREYS, J. This suit was brought in the circuit court of Franklin County, Charleston District, by appellee against appellant, to recover damages under the Federal Employers' Liability Act, on account of personal injuries received through the alleged negligence of fellow-servants. The alleged acts of negligence contained in the complaint are as follows: That, in operating its

trains under the block system between Coffeyville, Kansas, and Van Buren, Arkansas, for the protection of its employees, it violated the rule of the system by permitting extra six south, a freight train, to enter the block and occupy the main track between Vian and Sallisaw, Oklahoma, without furnishing an order or caution-card to appellee or his conductor, Charles Keith, advising them to proceed with their train, extra 1806 south, under control against said extra six south to Sallisaw, but, in lieu thereof, delivering them an order or caution-card advising them to proceed with their train from Gore to Vian under control of said extra six south; that appellant, through its agents at Vian, lowered the arm of the semaphore post and displayed the green light from the board thereof, which indicated that the main track between Vian and Sallisaw was clear, and that they could proceed with safety; that, about two miles south of Vian, said extra six south was stopped and backed toward the train being operated by appellee, in violation of rule No. 99, requiring that, when trains are stopped on the main track for any cause, a flagman be sent back from the rear end of said train with flags and signals a sufficient distance to insure full protection to approaching trains; that a box-car was attached to the caboose of said extra six south, which obstructed the lights on the rear end thereof from view.

Appellant filed an answer denying *seriatim* the alleged acts of negligence, and pleading the assumption of risk by appellee in bar of a recovery, and contributory negligence to diminish the amount of any recovery. Appellant also filed a cross-complaint claiming damages in the sum of $1,800 against appellee for driving the locomotive operated by him into the caboose and several box-cars attached to the rear end of said No. 6 south, through his alleged carelessness and negligence in failing to maintain a lookout, in failing to heed signals to stop his train, and in exceeding the maximum speed limit of thirty miles an hour, fixed by order of appellant.

Appellee filed an answer to the cross-complaint, denying each allegation of negligence contained therein, and pleading specifically that, whatever damage resulted from the collision was caused by the carelessness and negligence of appellant, as set out in appellee's complaint.

The cause was submitted to a jury upon the pleadings, testimony, and instructions of the court, which resulted in a verdict and consequent judgment for $10,000 against the appellant, from which is this appeal.

According to the undisputed testimony in the record, appellant operated a railroad under the block system between Van Buren, Arkansas, and Coffeyville, Kansas, passing through the State of Oklahoma. Appellant and its employees were engaged in interstate commerce at the time of the collision of the trains Nos. 6 and 1806 extra south, which resulted in the injury of appellee. The block system was one by which the conductors and engineers operating trains between certain stations were apprised of trains in front of or following them, and directing them, by caution-cards, to operate their trains under control with reference to particular trains in front of them. The movement and control of all trains between Van Buren and Coffeyville were under the control of appellant's train dispatcher at Van Buren, who directed the movement of all trains between said points by telegraph and telephone orders. The main line track was cut up into blocks. There was a block between Gore and Vian and between Vian and Sallisaw. Appellant maintained a semaphore board at Vian. It consisted of a board and arms attached to a post. When the arms were pointing downward and a green light was exhibited on the board, it was a signal to approaching trains that the track was clear, and to proceed; but, if a red light was displayed, it was a signal to stop for telegraph or telephone orders. When train No. 1806 extra south, operated by appellee and his conductor, C. R. Keith, pulled into Gore the night of January 31, 1921, the agent at that station handed them a caution-card directing them to

operate their train between block stations Gore and Vian under control against train No. 6 extra south, which was in front of them in said block. This caution-card became ineffective, or, in railroad parlance, died at Vian. The caution-card given appellee and his conductor contained an incorrect order. The order sent by the dispatcher to the agent at Gore to deliver to appellee and his conductor was to proceed with their train under control against extra six south from Upson, a station between Gore and Vian, to Sallisaw. The caution-card containing the correct order was never given to them. In obedience to the order contained in the caution-card given them by the agent at Gore, appellee and his conductor proceeded with their train under control against extra six south to Vian. As they approached Vian they observed the arms of the semaphore post pointed downward and the green light exhibited on the semaphore board, so, under the belief that extra six south had passed Sallisaw, they entered the block between Vian and Sallisaw and proceeded southward without stopping at Vian. There was a railroad bridge 603 feet long, including the trestle work, about a mile south of Vian. The south 459 feet of the bridge was on a slight curve. The curve continued for about 450 feet after leaving the south end of the bridge before the track straightened out. From the center of the curve south of the bridge the track was straight and slightly up grade for 1,782 feet, or to the point where the engine operated by appellee collided with the rear end of extra six south. Appellee was in possession of a bulletin issued by the superintendent that the office at Vian would be closed from 11 o'clock P. M. to 3 o'clock A. M. It was a rule in the block system that block stations should remain open until the main track in the block was clear of trains. There is a conflict in the testimony as to whether a superintendent's bulletin would supersede the block rules and close a block station without authority of the dispatcher. There is also a conflict in the testimony as to whether appellee was guilty of negli-

gence in passing Vian without stopping in the event the office was open. While all the witnesses interpreted the green light on the semaphore board as a signal to approaching trains that the track was clear and to proceed, they differed as to whether the engineer should stop for orders if lights were on in the office. The testimony responsive to all other allegations of negligence pro and con was conflicting. A number of witnesses testified on each side, and to attempt a summary of the testimony of each would extend this opinion to a great length, so only a general summary of the evidence will be attempted.

The testimony adduced by appellee tended to show that he kept a constant lookout as he proceeded south from Vian, and that he could have seen a flagman signaling to him if he had been at mile-post 536, or anywhere near the south end of the bridge or the south end of the curve, in time to have stopped his train before it ran into the rear end of extra six south; that he was running 25 or 30 miles an hour, but was not exceeding the maximum speed limit of 30 miles an hour fixed by appellant; that the first intimation he had that a train was in the block ahead of him was while his train was in the curve south of the bridge; that his fireman then told him to stop, as a red light was ahead of them; that he immediately shut off the engine, put the air into emergency, and opened the sander; that this was all that could be done to stop the train; that, as he came around the curve onto the straight track, he first observed the red light on the side of the track near the right-of-way fence, in the hands of Tom Murray; that, at the time, Murray was some fifteen or twenty car lengths from him and about the same distance from the rear end of extra six south; that Murray had a white light also, but had no fusee; that a fusee flares up and makes a light twenty feet high, and that he saw no light of that kind anywhere that night; that he saw a stop-signal light on the right-of-way between the caboose and engine of extra six south as he approached that train, which indicated

that they had lain down on the hill and were backing up to get a run over the hill; that he remained at his post. until his engine was within six or eight car lengths of the rear end of extra six south, and, being unable to stop his train, the speed of which had been reduced from 25 or 30 miles to about 8 miles an hour, he jumped to save his life, and permanently injured himself.

The testimony adduced by appellant tended to show that extra six south was stopped to fix a hot-box; that, just before stopping, a fusee was thrown off by the brakeman, which flared up and burnt properly; that the flagman, Tom Murray, who was carrying a red and white lantern and a fusee, jumped off the train and ran back to mile-post 536, near the south end of the bridge, and attempted to flag appellee by waving the fusee at him; that appellee did not answer, and passed by him without slackening the speed of his train; that he turned and ran along the train, shouting and shaking the fusee; that when the engine hit the caboose of extra six south, the entire train operated by appellee had passed him; that, at the time of the impact, extra six south was not backing; that the flagman went back a sufficient distance and signaled to have fully protected appellee had he been keeping a lookout and had he made proper effort to stop his train.

During the progress of the trial appellant introduced M. J. Crotty, its division superintendent on the division where the injury occurred, who estimated the damage to appellant's equipment resulting from the collision, which he had made up from reports received by him from the master mechanic and from the permanent records of the appellant on file, showing damage to equipment. This testimony was excluded, on motion of appellee, over the objection and exception of appellant, and the exception was preserved in its motion for a new trial.

All the issues of fact presented by the pleadings and testimony, except as to the value of the property of appellant destroyed in the collision, was presented to the jury and determined against appellant.

Appellant contends for a reversal of the judgment mainly upon alleged erroneous instructions given by the court. It is conceded by appellant that there was a dispute in the testimony as to the proximate cause, which made that issue of fact a question for determination by the jury and not by the court. It is insisted therefore that instructions Nos. 4 and A-4, under which the issue of proximate cause of the injury was submitted to the jury, are improper declarations of the law. The instructions are as follows:

"4. Should you believe from the evidence that it was the custom or rule of the defendant to give to locomotive engineers in its employ orders or notice of the presence of trains preceding them upon the main line track of defendant, and that plaintiff was, at the time of the injuries he complained of, if any such injuries have been shown, in charge of one of defendant's locomotives, following a train just ahead of plaintiff's locomotive and train, and that the defendant negligently failed to notify plaintiff that said train was ahead of him, occupying the main line track of the defendant, and that such failure of the defendant to give plaintiff said notice caused, or contributed to cause and bring about, to plaintiff the injuries he complained of, if any such injuries have been shown, then your verdict should be for the plaintiff."

"A-4. Should you believe from the testimony that appellant's train dispatcher, Westmoreland, sent a caution-card to plaintiff, at Gore, Okla., advising or notifying him to proceed from Upson, Oklahoma, to Sallisaw, Okla., with his train under control against train extra 6 south of Sallisaw, Okla., and that the agent at Gore failed to deliver to plaintiff the caution-card advising him to proceed from Upson to Sallisaw; and that defendant's agent, Mr. Mattox, at Gore, failed to deliver to plaintiff said caution-card, and in lieu thereof said agent delivered to plaintiff the caution-card in evidence, then this was an act of negligence, and, should you believe from the evidence that this act of negligence caused, or contributed to cause, plaintiff to proceed with his train from Vian to

Sallisaw without his train being under control, caused or brought about the injuries complained of, then your verdict should be for the plaintiff, unless he is prevented from recovery under other instructions given herein."

The alleged vice contained in the instructions consists in the use of the language "or contributed to cause," following the word "cause." It is argued that the use of this language permitted the jury to find for appellee if appellant's failure to give him a caution-card contributed in any degree to the injury, even if the injury was the result of appellee's own negligence in failing to heed a flagman that was sent back for his own safety, or in failing to look to see the red lights on the rear of the caboose, or in failing to stop his train within the distance of 1,782 feet after being apprised of the red light ahead of him. The evidence was in conflict as to whether he could have stopped his train within that distance. Appellee testified that he made every effort to stop it within that distance, and failed to do so. Tests were made afterwards with trains containing the same number of cars loaded in the same way, and stops were made in very much shorter distances. We think the instructions complained of deal solely with the alleged negligence of appellant in failing to give appellee a caution-card and, in effect, told the jury, if that act of negligence caused the injury, they should find for appellee. The jury were told in other instructions that, if appellee's own acts of negligence were the proximate cause of the injury, they should find for appellant. We think the words "contributed to cause" meant cause, and were mere surplusage. *Prescott & N. W. Ry. Co.* v. *Henley,* 124 Ark. 118. If appellant thought these additional words immediately following the word "cause" were not synonymous with the word "cause," and that such words would confuse or mislead the jury, a specific objection should have been made to them at the time the instructions were given. A general objection only was made to the instructions at the time they were given. A specific objection was not

made until a motion for a new trial was filed. This was too late to enter a specific objection.

Appellant next contends for a reversal of the judgment because the court gave instruction No. 5, relative to assumption of risk by appellant. It is argued that the instruction, in effect, told the jury that appellee did not assume any risk growing out of the negligence of appellant or any of its employees, when the law is that the employee assumes the negligence of his employer and his fellow-servants if he is aware of the negligence and appreciates the danger. Appellee contends that the instruction conforms to the law as thus announced. Under our view of the facts in the record, the doctrine of assumed risk had no place in the case, and no prejudice could have resulted to appellee on account of instructions submitting that issue to the jury. The undisputed facts show that appellee was permitted to enter the block between Vian and Sallisaw without knowledge that extra six south was on the main track in front of him; that appellant's agent at Gore had failed to give him a caution-card which the dispatcher had sent for the purpose of apprising him that said train was in the block between Vian and Sallisaw. The undisputed evidence is that a green light on the semaphore board was notice that the track was clear ahead, and to proceed. The issue of whether the office at Vian was open or closed had relation to whether appellee was negligent in failing to stop for orders, and had no relation whatever to the assumption of risk. The subsequent conduct of the respective parties also relates to issues of negligence and contributory negligence, and not to the assumption of risk.

Appellant next contends for a reversal of the judgment because the court refused to give instructions Nos. 8 and 15, which are as follows:

"8. You are instructed that there is no proof that the train which was struck was backing up, and your verdict must be for the defendant on this allegation of negligence."

"15. You are instructed that there is no evidence that extra six south was seen to back up or move in a northerly direction toward plaintiff's locomotive and train of cars, and you are instructed that you are to find for the defendant on this allegation of negligence in plaintiff's complaint."

It is argued that one of the grounds of negligence relied upon by appellee to recover was that, when appellee's train was coming down the track from Vian, extra six south was being negligently backed up in a northerly direction toward appellee's train, and that there was no evidence, except the hearsay statement of Murray, several days after the accident, which tended to establish said act of negligence. This was not the only evidence in the record bearing upon that point. Appellee testified on redirect examination as follows: "I saw a stop signal given ahead of me on the train ahead of me. That light was between the caboose and engine, and was given by Holland's train. That indicated, to my mind, that they had lain down on the hill and were backing up to get a run to go over the hill.' As there was competent evidence in the record tending to show that extra six south was backing when appellee's engine struck the rear end of said train, the court properly refused both instructions.

Appellant's next contention for a reversal of the judgment is that the court erred in refusing to give its requested instruction No. 13 and the latter part of its requested instruction No. 21. Request 13 was covered by instruction No. 12, and the latter part of request 21 was covered by instruction 20 given by the court. It was not error therefore to refuse these requests.

Appellant's next and last contention for a reversal of the judgment is that the court erred in excluding all of the evidence of witness Crotty with reference to the damage to the equipment of the appellant, thereby forcing it to take a nonsuit. It is a sufficient answer to this contention to say that appellant was not forced to dismiss his cross-complaint by the exclusion of this evidence. Appellant insisted that this evidence was com-

petent, and that the court erred in excluding it.  Appellant objected and excepted to the exclusion thereof, and it could have tested the correctness of the ruling of the court in excluding this testimony, if it had not waived its objection and exception by voluntarily dismissing its cross-complaint.  In view of this waiver, the court cannot pass upon the alleged error of the court in excluding the testimony.

No error appearing, the judgment is affirmed.