Sallee *v.* Shoptaw.

4-7952                                    198 S. W. 2d 842

Opinion delivered July 8, 1946.

Rehearing denied September 30, 1946.

*Sid J. Reid* and *Buzbee, Harrison & Wright,* for appellant.

*D. D. Glover* and *W. H. Glover,* for appellee.

Griffin Smith, Chief Justice. Judgment for $7,500 was rendered on a jury's verdict to compensate the estate of Flobert Shoptaw because of his death. R. E. Sallee, doing business as Sallee Brothers (against whom the judgment went) has appealed on the ground that there was no substantial evidence of negligence.

Appellant manufactures timber products, and operates from Pocahontas. In March, 1945, it sent one of its trucks into Grant County. H. B. Jordan maintains an Esso filling station at Sheridan, and Shoptaw was his employe. Sallee's truck was driven by Clay Kincade. En route from Pocahontas to Warren by way of Sheridan, Kincade stopped for lunch half a block from Jordan's station. The rear "tractor" or axles of the truck were equipped with dual wheels, on each side. When Kincade had finished his lunch he discovered that the

inside right rear tire was "flat." Kincade walked to the filling station, where Shoptaw told him to drive the truck to the grease rack for necessary repairs.

Kincade stood by while Shoptaw removed the rim containing the punctured and deflated tires—casing, inner tube, and "reliner." Evidence offered by appellee (plaintiff below) is that the heavy metallic rims used on G.M.C. trucks are of two kinds: one "solid," a continuous circular casting or forging. The other is what manufacturers term a "split" or "breakable" rim: that is, the circumference or closed plane which forms the rim is cut at right angle to the curve, permitting the severed ends to be disengaged and overlapped. Result is that the circumference is reduced so that the casing may be put on or taken off.

One side of the rim contains a solid or made-on rim or flange to serve as a wall for the casing. The other side is made with a much smaller "ridge" or margin, having an inside groove. A so-called flange and "lock-rim" fit into the groove provided for that purpose. Since the main rim upon which the casing is mounted, and the lock-rim and flange which hold it in place, are made of steel or other metallic alloy, elastic to the extent that the circumference may be increased or decreased within limits, it follows that in mounting or demounting a casing, making repairs, etc., certain care must be exercised, and some skill is required.

After Shoptaw had removed the rims, vulcanized the tube, and had reassembled the parts, inflation was attained at eighty pounds pressure. He then replaced the "wheel" and had partially screwed on two of the "lugs" (or an inference to that effect arises from the testimony) when the inner tube blew out with terrific force. A part of the metallic equipment struck Shoptaw, injuring him fatally. The rim and locking device are exhibits and were brought to this Court.

Appellee's argument is (a) that appellant was negligent in delivering for repair a "flat" tire mounted on a defective rim; (b) appellant's conduct in using

". . . an International rim and wheel with split rim instead of the regulation G.M.C. rim and wheels that were of manufacturer's design" was negligence; (c) Kincade was negligent in directing Shoptaw to inflate to eighty pounds, ". . . when he knew the inner tube was defective, having been patched." (d) Because of defective "packing" or an imperfect valve, or due to a "leak," transmission grease escaped and had accumulated on the wheel, ". . . causing it to become more dangerous in operation by being slick," etc. (e) Appellant was negligent in not informing [Shoptaw] of defective condition [of the wheel] when [its condition constituted] a hidden danger, and when it was covered with grease, mud, and dirt to the thickness of an eighth of an inch, [preventing Shoptaw] from seeing, knowing, and appreciating the danger.

*First.*—(a)—There is no direct evidence that Kincade or appellant knew the rim was defective. Testimony was that prior to the trip to Sheridan Kincade stated he had experienced difficulty with the rim. Such testimony was used for impeachment purposes, Kincade having denied the alleged conversations. Appellee argues that the test is not what appellant or Kincade knew, ". . . but what, by the exercise of ordinary care, they could have known." If it be assumed that tire blowouts had occurred, there is no evidence that the malfunctioning of the locking device, now complained of, was known to appellant or Kincade, or that its actual condition was such as to put a reasonably prudent person on notice.

*Second.*—(b)—Testimony by appellee's witnesses is that the type of rim used on the truck was not unusual. There is no proof that it was inherently dangerous.

*Third.*—(c)—It was shown by appellee's own witnesses that a tire such as that repaired by Shoptaw carried from sixty-five to one hundred pounds of air—the amount depending upon load, road conditions, and the driver's preference. The casing did not "blow" or tear —only the inner tube gave way.

*Fourth.*—(d)—If dirt accumulated on the wheel because of escaping grease, that fact was more apparent to Shoptaw than it was to Kincade, for Shoptaw dismantled the equipment, worked with it, and put the parts back in the position from which they were taken.

*Fifth.*—(e)—The "hidden danger" complained of was an incident to the task Shoptaw undertook to perform. It is a grievous misfortune when tragedy occurs in the manner here disclosed; but before a defendant can be required to respond in damages (other than in cases of insurance and under Workmen's Compensation Laws) some negligence must be shown by substantial testimony.

Irrespective of the technical legal relationship created when Kincade went to the filling station for repairs —whether employer and independent contractor, master and servant, bailor and bailee—the naked fact remains that Shoptaw, acting for his principal, received the truck for the purpose of repairing the tube. The so-called "dangerous condition" it is contended Kincade knew of, or by the exercise of ordinary care could have become informed, related to the tire and rim upon which Shoptaw worked, and the condition was such as might have pertained to any rim in the circumstances here disclosed. It must be held, therefore, as a matter of law, that Shoptaw assumed the incidental risks. When, after dismounting the casing, repairing the tube, and replacing the equipment, he did not discover the flaws, how can it be said that a question of fact was made for the jury when Kincade failed to tell Shoptaw that the rim was warped, that the locking device might not function, and that eighty pounds of air pressure would possibly blow the casing off?

There should have been an instructed verdict for the defendant. The judgment is reversed, and the cause is dismissed.

Ed. F. McFaddin, Justice, concurring. The majority opinion uses this expression: "Irrespective of the technical legal relationship created when Kincade went to the filling station for repairs—whether employer and

independent contractor, master and servant, bailor and bailee—the naked fact remains that Shoptaw, acting for his principal, received the truck for the purpose of repairing the tube. . ."

I quote the above sentence as the reason for this concurring opinion. It is because I think that the court should state what the relationship was between Sallee and Shoptaw, that is, whether (a) employer and independent contractor; (b) master and servant; or (c) bailor and bailee.

Not only should the court state the relationship, but should also then determine the case on the basis of the liability and legal consequences flowing from such relationship. This should be done so that the opinion might be a guide for litigants, lawyers and trial courts in future cases. I am thoroughly familiar with the rule that the Arkansas Supreme Court is not required to deliver written opinions. Such has been the law since *Vaughn* v. *Harp*, 49 Ark. 160, 4 S. W. 761. But when the court does deliver a written opinion, it should state the relationship of the parties and the legal consequences flowing from such relationship: this, because, when a written opinion is delivered, it should be a guide for future cases. As is so clearly stated in 15 C. J. 968:

"It has been considered, however, that even though an opinion is not required by statute, one should be written where the case involves the application of an old principle. . . .",

Such is the situation here: the case involves the application of an old principle—bailor and bailee—to the relatively new situations brought about by the development of motor vehicles.

In her effort to sustain liability, the appellee has cited such cases as *Stroud* v. *Southern Oil Transportation Co.*, 215 N. C. 736, 3 S. E. 2d 297, 122 A. L. R. 1018; and *A. L. Dodd Trucking Service* v. *Ramey,* 302 Ky. 116, 194 S. W. 2d 84. In his effort to avoid liability, appellant has cited such cases as *Varas* v. *James Stewart & Co.,* 223 Mo. App. 385, 17 S. W. 2d 651; *Feldewerth* v. *Great Eastern Oil Co.* (Mo. App.), 149 S. W. 2d 470; and *Bolin*

v. *Corliss Co.,* 262 Mass. 115, 159 N. E. 612. These cases have all been studied.

I concur, therefore, to point out what I consider was the relationship between Sallee and Shoptaw, and the legal consequences flowing from such relationship.

I. *The Relationship Between Appellant and Shoptaw.* Preliminary to the question of negligence, there should be determined the relationship of appellant and Shoptaw, in order to see the duty that the appellant owed Shoptaw. When Shoptaw accepted the work of removing the rim and tire from the truck, and repairing the punctured tube, and replacing the re-assembled tire and rim on the truck, then the relationship between appellant and Shoptaw became that of bailor and bailee; and not that of master and servant. In 8 C. J. S. 240, it is said: "Where articles are delivered by one person to another who is to perform labor upon them . . . the transaction is a bailment notwithstanding the articles are to be returned in altered form."

And in 8 C. J. S. 242, in distinguishing between bailor and bailee relationship as compared with master and servant relationship, it is said: "The relation of bailor and bailee is to be distinguished from that of master and servant in that property in the hands of the servant is in the possession and control of the master, the servant having only custody, while in the case of bailment the possession and control of the property, . . . passes to the bailee during the period of the performance of the contract, and in that a servant, as differing from a bailee, is subject to the orders and control of the owner of the goods."

See, also, 6 Am. Juris., 187. In *Warren* v. *Geater,* 206 Ark. 518, 176 S. W. 2d 242, we held that, when an automobile was delivered to a filling station operator to have repairs made on the car, the relationship between the automobile owner and the filling station operator was that of bailor and bailee. The same rule applies to this case: so I think that the appellant was a bailor and Shoptaw was a bailee.

II. *The Liability of a Bailor to a Bailee in a Case Like This.* In 6 Am. Juris., 290, in discussing the bailor's liability *in tort* for defects in the chattel, it is stated:

". . . where the bailor delivers an article to another for work to be performed upon it, as in the case of a chattel left to be repaired, there is authority for the rule that the bailor owes to the bailee a duty to disclose any condition of the chattel known to him, and unknown to the bailee, from which danger to the bailee, his property, or his servants might reasonably be anticipated during the work upon the chattel in the manner known to be intended, and if he (bailor) fails to give such warning, he is liable for injuries resulting therefrom without negligence on the part of the bailee. It seems, however, that the bailor's duty ceases with such notification; he is not bound further to tell or teach the bailee how to avoid the danger. Moreover, as to a defective or dangerous condition of the chattel at the time of the bailment, of which condition the bailor has no actual knowledge, his only duty to the bailee is to exercise ordinary care, and where it does not appear that he failed in this duty, he is not liable for injuries resulting from such condition."

There are annotations more or less in point in 12 A. L. R. 789; 61 A. L. R. 1337; 122 A. L. R. 1023; and 131 A. L. R. 849. Whether an automobile owner is under such a strict duty when he takes his car to a garageman for mechanical repairs, is not necessary to decide. In the case here, we are only dealing with a situation where an automobile owner took his car to a filling station to have a puncture repaired and the rim replaced on the car.

Even applying the above-stated rule from American Jurisprudence to the case at bar, I deduce that:

A. Appellant owed Shoptaw the duty to warn him of any defects in the rim which were known to appellant and which were unknown to Shoptaw.

B. Appellant owed Shoptaw the duty to exercise ordinary care to discover any unknown defects in the rim.

I proceed to consider these two points:

A. What were the defects alleged and proved as known to appellant and unknown to Shoptaw? Appellee claimed that there were two defects in the rim before the explosion:

(1) It was wrenched and warped, and such condition kept the lock rim from fitting in the groove on the large rim.

(2) It was greasy and dirty, and such condition kept the lock rim from fitting in the groove on the large rim.

As to (1)—*i.e.*, the wrenched and warped condition— there is no proof that either the large rim, the flange rim, or the lock rim was wrenched or warped *before the explosion*. There were only two witnesses who testified as to the condition before the explosion. These were the witness Jordan (called by the appellee), and the witness Kincade (called by the appellant). Jordan testified that, when he returned to the filling station after lunch, Shoptaw had already replaced the repaired tube in the casing and had replaced the casing on the large rim; and was engaged in putting the removable flange and lock rim on the large rim. Jordan noticed the grease and dirt on the rim; but nowhere in his testimony (of 22 pages) did Jordan ever say that either the large rim, the removable flange, or the lock rim was wrenched or warped *before the explosion*. In fact, he said that there was nothing out of the ordinary about the repair job. Kincade testified positively that neither the large rim, the removable flange, nor the lock rim, was wrenched or warped before the explosion; so the allegation about the wrenched and warped condition is without any evidence to support it.

I come then to allegation (2)—*i.e.*, that the rim was greasy and dirty, and that such condition kept the lock rim from fitting into the groove on the large rim. There is an abundance of evidence to sustain this allegation, and there is no evidence that the appellant, or anyone for him, warned Shoptaw of this greasy and dirty condition. But the rule, as above stated, is, that appellant was under no duty to warn Shoptaw of defects of which Shoptaw

608

already knew; and the greasy and dirty condition of the rim was certainly known to Shoptaw because he had handled it personally in all of his work on it. The greasy and dirty condition of the rim was as well known to Shoptaw as to appellant's agent, Kincade, or to appellee's witness, Jordan. Shoptaw was neither a novice nor an inexperienced youth. He was a man 46 years of age, and for more than a year had been doing filling station work like the kind here involved. With the greasy and dirty rim before him, Shoptaw knew its condition as well as anyone. Therefore, appellant was not guilty of negligence in failing to warn Shoptaw of the greasy and dirty condition; and no negligence can be predicated on the greasy and dirty condition of the rim.

B.   The appellant owed Shoptaw the duty to exercise ordinary care to discover any unknown defects. I do not find in the record any evidence that appellant, or anyone for him, failed to exercise such care to discover any such unknown defect in the rim. In fact, there is no evidence of any other defect, *prior to the explosion*, except the greasy and dirty condition of the rim; and this has been discussed already.

So I conclude that there is no evidence of any negligence on the part of the appellant; and, in the absence of proof of negligence, there can be no recovery in this case.