LEO J. AMBORT & SONS *v.* BRATTON.

4-9071                                          227 S. W. 2d 617

Opinion delivered February 27, 1950.

Rehearing denied April 3, 1950.

*Wright, Harrison, Lindsey & Upton,* for appellant.

*John H. Lookadoo* and *Agnes F. Ashby,* for appellee.

DUNAWAY, J. Appellee, W. C. Bratton, operates a filling station at Arkadelphia, Arkansas, and in connection therewith repairs automobile and truck tires. Appellant, Leo J. Ambort & Sons, is a corporation engaged in the fruit and vegetable produce business at Little Rock, Arkansas.

Gordon Holland, one of appellant's truck drivers, was returning to Little Rock from Texas with a load of produce on December 29, 1948, when the inside left trailer tire became flat. Holland drove to appellee's station and asked appellee if he could fix the flat. Upon receiving an affirmative reply, Holland parked the truck and appellee proceeded with the repair job. After the tire had been repaired and while appellee was in the act of placing the tire and wheel on the trailer axle, the tire blew out or exploded causing the outer or lock rim to fly off and strike appellee in the face inflicting serious and painful injuries.

Appellee filed this action for damages against appellant alleging in his complaint: ". . . that the plaintiff, while exercising all reasonable care and precaution as any reasonable, prudent person would under the same or similar circumstances, took the casing off the rim, but noticed that the rim was sprung and he called the driver of the defendant's truck's attention to this and the defendant's truck driver, acting for the defendant at the time, told the plaintiff that yes, he knew it was sprung and that it had been that way for some little time, but that it was all right, and that they had had it examined and to go ahead and put the casing back on the rim and put 80 pounds of air in the casing.

"The plaintiff, believing what the defendant's agent said, and assuming that he knew what he was talking about, put the casing back on the rim and put 78 pounds of air in the casing and started rolling the casing back to the truck to put it on the truck and the casing blew out because of this defective and sprung condition of the rim and injured the plaintiff as follows. . . ."

A demurrer to the complaint was overruled and appellant answered with a general denial and pleas of

assumed risk and contributory negligence. A jury trial resulted in a verdict and judgment in appellee's favor for $20,000. This appeal follows.

The principal contention for reversal of the judgment is that a verdict should have been directed in appellant's favor because the evidence is insufficient to show actionable negligence on its part. In testing the sufficiency of the evidence to support the verdict we must, of course, consider the testimony in the light most favorable to appellee. After stating that he repaired the tire and started to put it back on the wheel, appellee testified: "A. Yes, sir, I looked at the rim and I noticed it was sprung and I called Mr. Holland and he came back out from the stove. It was in the winter time and cold that night and he was in the station by the stove. I called him out there where I was fixing the tire, and I showed him it was sprung. It was a two ply rim—that is what I call those that have one single metal rim, but this one had a metal rim and then a smaller lock rim that goes with it and I showed him the smaller one— that was the one that seemed to be sprung. Q. Was it sprung? A. Yes, sir. . . . .

"Q. Go ahead. A. Well, he said, 'he knew it was sprung, but it had been inspected and was all right'— 'they had the trucks inspected and that it wasn't dangerous,' and I dismissed it from my mind figuring he knew more about it than I did. Q. Would you have proceeded to fix the flat and put the tire and casing on if he had not told you it had been inspected and it was all right? . . . A. I would not have put it back on because I have refused to put them on that were sprung."

On cross-examination appellee explained in detail the mechanics of repairing and assembling truck tires and the method used on the occasion in question. He stated that he had worked in service stations for approximately eleven years; that he had four or five years experience in handling truck tires and rims; and that he catered to truck business at his service station. He further testified: "Did you ever work with or around sprung rims before? A. You mean had I seen them

before? Q. Yes, or worked with them? A. Yes, sir. Q. I believe you said you had refused to put them on? A. Yes, sir, I have refused to until they get another rim. Q. Why was that? A. Because the rim was sprung and the guy admitted it and I had him to get another. Q. Is a sprung rim dangerous to use? A. Dangerous to use? Q. Yes. A. They are. Q. Have you ever had one blow before? A. Yes, sir, I have. That is the reason I watch them so close. Q. And this rim was sprung? A. Yes, sir. Q. And in your opinion it was dangerous? A. As far as I knew it was dangerous. Q. It was dangerous to use if it was sprung? A. Yes, as far as I knew it was dangerous. Q. You not only thought it was dangerous but you knew it was dangerous before you started working with it? A. Yes, sir. It was dangerous. That was the reason I said something to him about it, and he said it had been inspected and I figured he knew more about it than I did. Q. But in your opinion it was still sprung and dangerous to use? A. As far as I was concerned it was. Q. When you use a sprung rim and one sprung like that one that night, what is likely to happen? A. You mean what happens? Q. Yes. A. The same thing I have here. Q. The blowing off is the dangerous part of it? A. Yes, sir. . . . "

Our decision in the case of *Sallee* v. *Shoptaw,* 210 Ark. 600, 198 S. W. 2d 842 is controlling in the case at bar. In the *Sallee* case the situation was very similar to that here presented. A truck was taken into the service station where Shoptaw worked. After Shoptaw had repaired a "flat" tire and was replacing it on the truck, there was an explosion caused by a defective lock-rim, resulting in the death of Shoptaw. An action was brought to compensate his estate for his death on the theory that the owner of the truck was negligent in delivering to the service station for repair a tire mounted on a defective rim. In holding that the defendant there was entitled to a directed verdict we said at page 603:

"Irrespective of the technical legal relationship created when Kincade (the driver of the truck) went to the filling station for repairs—whether employer and independent contractor, master and servant, bailor and

bailee—the naked fact remains that Shoptaw, acting for his principal, received the truck for the purpose of repairing the tube. The so-called 'dangerous condition' it is contended Kincade knew of, or by the exercise of ordinary care .could have become informed, related to the tire and rim upon which Shoptaw worked, and the condition was such as might have pertained to any rim in the circumstances here disclosed. It must be held, therefore, as a matter of law, that Shoptaw assumed the incidental risks.''

Appellee argues that the *Sallee* case is distinguishable because there it was not shown that the defect in the rim had been discovered prior to the accident, while here it had been discovered and appellee proceeded to inflate the tire only after appellant's driver assured him that it would be safe to do so. Appellee then relies upon cases involving recovery of damages from a master for injuries sustained by a servant who proceeded with dangerous work upon the assurance of safety given by the foreman or other person in charge of the work.

The relationship in the instant case was not that of master and servant. Appellant's driver did not attempt to direct the manner in which the tire. was repaired. In taking the truck into his place of business to repair the tire, appellee was a bailee for hire. The duty of appellant, as bailor, in the situation was fully discussed in the concurring opinion of Mr. Justice McFADDIN in the *Sallee* case. There it was said at page 606:

'' '. . . where the bailor delivers an article to another for work to be performed upon it, as in the case of a chattel left to be repaired, there is authority for the rule that the bailor owes to the bailee a duty to disclose any condition of the chattel known to him, and unknown to the bailee, from which danger to the bailee, his property, or his servants might reasonably be anticipated during the work upon the chattel in the manner known to be intended, and if he (bailor) fails to give such warning, he is liable for injuries resulting therefrom without negligence on the part of the bailee. It seems, however, that the bailor's duty ceases with such notifi-

cation; he is not bound further to tell or teach the bailee how to avoid the danger.' ''

The testimony of appellee, as set out rather fully herein, is that he discovered the sprung rim and called it to the attention of appellant's driver. Appellee, a man of many years experience in tire repair work, then testified that although he knew from his own experience that sprung lock-rims were dangerous to handle and although he knew at the time this one was dangerous he went ahead with the work. In these circumstances it is clear that appellee had full knowledge and appreciation of the danger involved, and assumed the incidental risks of the work he undertook.

The trial court erred in denying appellant's motion for a directed verdict. The judgment is reversed and the cause dismissed.

Mr. Justice McFADDIN and Mr. Justice MILLWEE dissent.