WILLIAMS *v*. COOPER.

5-519                                          273 S. W. 2d 15

Opinion delivered December 6, 1954.

*Wright, Harrison, Lindsey & Upton,* for appellant.

*John H. Lookadoo* and *Shaver, Tackett & Jones,* for appellee.

J. SEABORN HOLT, J. Appellee, Arthur T. Cooper, recovered judgment in the amount of $25,000 for personal injuries received while operating a bulldozer, as an employee of Bales and Kite, General Contractors, on February 2, 1953, at about 9 A.M. From the judgment is this appeal.

For reversal, appellants rely upon the following points: "(1) Defendants were entitled to a judgment as a matter of law. (2) The lower court erred in giving plaintiff's requested instruction No. 1. (3) The lower court erred in giving plaintiff's requested Instruction No. 6."

— (1) —

There appears to be little, if any, dispute as to material facts. As to the sufficiency of the evidence to support the verdict, it is our duty to determine only whether there was substantial testimony on which the jury could have based its verdict. We are not concerned with where the preponderance may lie. "The rule is, that where fair-minded men might differ honestly as to the conclusion to be drawn from the facts, either controverted or uncontroverted, the question at issue should go to the jury." *Armour & Company* v. *Rose,* 183 Ark. 413, 36 S. W. 2d 70.

The record shows that Keith Williams was a subcontractor under Bales and Kite and J. W. Arnold was Keith Williams' employee. A truck belonging to Keith Williams was operated by Arnold, hauling gravel to a designated area, wherein appellee, Cooper, was operating a bulldozer and Keith Williams (subcontractor) at the request of Bales and Kite agreed to continue hauling gravel in wet weather, upon the agreement of Bales and Kite that Cooper (their employee) would pull the trucks in the event they should become mired in soft ground. A cable would be attached to the bulldozer op-

erated by Cooper in pulling the trucks, which were equipped with front bumper hooks, installed by Keith Williams. When a truck became stalled or stuck, Cooper would back his bulldozer near the truck and a cable would be looped over a bumper hook (or hooks) and Cooper would pull the truck with the bulldozer.

On the morning in question, February 2, while Cooper was pulling one of Keith Williams' trucks, driven by Arnold, one of the bumper hooks became loose, the cable slipped and struck Cooper on the head, seriously injuring him.

Prior to this mishap, on the afternoon of Friday, January 30, 1953, appellee, Cooper, discovered that the hooks on the truck driven by Arnold for appellant, Keith Williams, were in an unsafe and defective condition and he had told appellant, Arnold, and other drivers on the scene, including Mr. Watson, foreman for Keith Williams, in charge of the truck operations, that he would not pull the truck again until the bumper hooks were repaired. Cooper testified: ''A. I told them that hook had been damaged and not safe to be pulled on and that they must fix it before I would pull it any more. Q. What did they tell you? A. They said they would fix them. . . . Q. When you backed up on Monday in obedience to Mr. Arnold's motioning, to you, did you know that the bolt had not been repaired or that the hook had not been reconditioned? A. No, sir. I wouldn't have hooked onto it. . . . Q. Was it possible for you to see the condition of the hook or the bolt while operating your bulldozer and while seated there and while backing up to the truck to pull it? A. No, sir. Q. Tell the jury why? A. It is possible other people draw your attention away and by the obstructions you have behind you on this kind of bulldozer. Normally, you have to get up and raise up to look over to get a close enough view. Q. Even if you got up and looked over would it be possible for you to see the condition of the bolts under that hook? A. No, sir. Q. Tell the jury why you couldn't make an inspection of that hook on that morning when you backed up to that particular truck to

pull it out? A. I assumed by them telling me that they would repair it in our talk Friday that we had that that thing had been made sufficient for proceeding during our work. I just thought by them telling me that they would fix them that they would fix them.''

Appellant, Arnold, tended to corroborate Cooper's testimony. ''Q. Were you there when Mr. Cooper talked to you about the hook or the condition of it that was on the front of your truck? A. Yes, sir. Q. What did he tell you? A. He said, 'You know it's been bent over and it needs to be fixed.' Q. Was it leaning over? A. Yes, to a certain extent it was. Q. Did you promise to fix it? A. We told him we would see about getting it fixed. Q. Did you have it fixed? A. No, sir, I did not.''

There was other testimony of a corroborative nature.

After a careful review of all the testimony, we are unable to say that there was no substantial evidence to support a verdict for Cooper, based on a finding of negligence of appellants and want of contributory negligence on the part of Cooper. As we said in *The Mutual Life Insurance Company of New York* v. *Springer*, 193 Ark. 990, 104 S. W. 2d 195: ''There might be very great doubt, and yet, if there is any substantial evidence at all, it is sufficient to support a verdict.''

Whether Cooper exercised the ordinary or reasonable care required of him, in the circumstances, in view of appellants' promise to repair the hooks, which admittedly appellants failed to do, was a question for the jury.

Appellants insist that the facts in the present case bring it squarely within the rules announced in *Sallee* v. *Shoptaw*, 210 Ark. 600, 198 S. W. 2d 842, and *Leo J. Ambort & Sons* v. *Bratton*, 216 Ark. 725, 227 S. W. 2d 617, and they were entitled to an instructed verdict in their favor. We do not agree.

Those cases are distinguishable on the facts in each. It suffices to say that in those cases, there was absent the issue of a promise to repair, which is present here.

A great many instructions were given, seven on behalf of appellees and twelve for appellants. It appears that every phase of the case was fully covered in those instructions.

— (2) and (3) —

As indicated, appellants complain as to only two of appellee's instructions—No. 1 and No. 6. No. 1 was objected to generally as being a binding instruction and inherently wrong, and specifically as being argumentive, confusing to the jury, a comment on the facts and weight of the evidence and that it tended to lead the jury to believe that the court was detailing appellee's contentions which it thought were shown by the preponderance of the evidence. We do not so interpret its overall effect. While the instruction is unnecessarily long, and not to be commended for this reason, however, we do not think it erroneous when considered along with all the other instructions, as a harmonious whole, as the court clearly instructed the jury it must do.

Instruction No. 1 told the jury, in effect, that should they find from a preponderance of the testimony that certain acts of appellants were negligently performed "as defined by other instructions herein . . . it will be your duty to find for the plaintiff, provided you find that the plaintiff was guilty of no negligence which contributed to the accident." Binding instructions were discussed in *Hearn* v. *East Texas Motor Freight Lines,* 219 Ark. 297, 241 S. W. 2d 259, where it was held that although the instruction closed with the words "you will find," such direction by the judge was not prejudicial in view of other instructions that were tied in with the one complained of. See, also, *Browder* v. *St. Louis Southwestern Railway Company,* 221 Ark. 773, 256 S. W. 2d 333.

"As it is generally impossible to state all of the law in one instruction, if the various instructions separately present every phase of the law as a harmonious whole, there is no error in an instruction failing to carry qualifications which are explained in others." *St. Louis, I.*

*M. & S. Ry. Co.* v. *Carter,* 93 Ark. 589, 126 S. W. 99 (Headnote 5).

For the first time here, appellants say that the above Instruction No. 1 was erroneous for the reason that it omitted any reference to "causation." Since no specific objection was made for this reason at the trial and therefore no opportunity afforded the trial court to correct such alleged omission, the objection comes too late. "A specific objection to an instruction cannot be raised for the first time in a motion for new trial." *Missouri Pacific Railroad Co.* v. *Warrick,* 164 Ark. 556, 262 S. W. 644 (Headnote 2). "A specific objection to an instruction waives another specific objection not made in the trial court." *Coca-Cola Bottling Company* v. *Jenkins,* 190 Ark. 930, 82 S. W. 2d 15 (Headnote 4).

We point out that the element of causation was embraced in a number of instructions following No. 1. In appellee's Instruction No. 4, the court told the jury that in order to find the plaintiff, Cooper, guilty of contributory negligence "it is necessary that the injured party's (Cooper's) negligence contributed to cause it" and in appellants' Instruction No. 4, we find this language: "Even though you should find and believe that John Arnold or Keith Williams or his employees were guilty of some negligence, nevertheless, if you also find and believe from a preponderance of the evidence that Mr. Cooper was himself guilty of some negligence and that his negligence, if any, contributed to cause or helped to cause the accident, in any degree however slight, then you are instructed that under the law Mr. Cooper is not entitled to recover in this action and your verdict will be in favor of the defendants, John Arnold and Keith Williams."

We do not agree that there was error in giving appellee's Instruction No. 6, as follows: "You are instructed that it is not the duty of the plaintiff to exercise care to discover extraordinary defects in the machinery or equipment of the defendant, but that the plaintiff may assume that the defendants, or their agents have

exercised proper care as to extraordinary defects with respect to his safety, unless notified to the contrary, unless the want of care and danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them."

Appellants argue that there was no evidence of any extraordinary defect. In effect, the converse of this instruction appears in Instructions 9 and 14, given at appellants' request. These instructions provide: "9. If you find and believe that the accident was due to some defect in or connected with the tow hook, and that Mr. Cooper had knowledge of the defect, or acting as an ordinarily prudent man should have known of the danger, if any, of using the hook as it was used, then your verdict should be for the defendants, John Arnold and Keith Williams."

"14. If you find that Jack Bass hooked the cable on the truck driven by John Arnold and that Jack Bass was an employee of Bales & Kite, you are instructed that John Arnold had the right to presume that Jack Bass would attach the cable to the truck in a proper manner."

We think Instruction No. 6 was even more favorable to appellants than they were entitled to have. The language used would apply to any defect, whether ordinary or extraordinary. No duty rested on plaintiff, (appellee, Cooper), to discover defects, in the circumstances here, unless, as the instruction provides; "the want of care and danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them."

The judgment is affirmed.